UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER P. ZARKOWSKI,

       Plaintiff,                    Civil Action No. 14-10742
                                            Honorable Arthur J. Tarnow
v.                                          Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [13, 15]**

      Peter Zarkowski ("Zarkowski") commenced this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties filed motions for summary judgment, which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

      For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Zarkowski is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's motion for summary judgment [15] be GRANTED, Zarkowski's motion for summary judgment [13] be DENIED and, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision be AFFIRMED.

## II. REPORT

### A. Procedural History

On September 14, 2011, Zarkowski filed the instant application for DIB, alleging a disability onset date of November 26, 2007. (Tr. 52). The claims were initially denied on December 14, 2011. (Tr. 66). Thereafter, Zarkowski filed a timely request for an administrative hearing, which was held on August 15, 2012 before ALJ John Dodson. (Tr. 29-50). Zarkowski, who was represented by attorney Erin E. Jacobs, testified at the hearing, as did vocational expert Dr. Christian R. Barrett. (*Id.*). In a written decision dated October 23, 2012, the ALJ determined that Zarkowski is not disabled. (Tr. 14-24). On January 15, 2014, the Appeals Council denied review. (Tr. 1-5). Zarkowski filed for judicial review of the final decision on February 18, 2014. (Doc. #1).

### B. Framework for Disability Determinations

Under the Act, DIB is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(A).

The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

2

> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Schueuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 U.S. Dist. LEXIS 150240, at *21 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps . . . [i]f the analysis [then] reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

    **C.**    **Background**

        *1.*    *Disability Reports*

In an undated disability report, Zarkowski indicated that he suffers from high blood pressure, depression, herniated discs, and anxiety. (Tr. 172).  Zarkowski reported that he stopped working on November 26, 2007, as a result of these conditions. (*Id.*).  With respect to his education level, Zarkowski completed the ninth grade but never pursued any further studies. (Tr. 173). Prior to stopping work, Zarkowski was employed as a construction foreman. (*Id.*). Zarkowski stated that Pramod Kerkar, M.D. treated him for the foregoing physical and mental impairments. (Tr. 176).  At the time of the report, Zarkowski was taking Alaven, amitriptyline, and Cymbalta to treat his depression along with hydrocodone and oxycodone for pain relief. (Tr.

175).

In an undated function report, Zarkowski stated that he lives in a house with his fiancée. (Tr. 152). When asked to describe his daily activities, Zarkowski indicated that he reads, takes naps, and watches television. (Tr. 153). His pain interferes with his sleep, which leaves him tired during the day. (*Id.*). Zarkowski needs his fiancée to remind him to take care of his personal hygiene and take his medicines. (Tr. 154). She also prepares all of his meals. (*Id.*). Zarkowski reported that he is unable to perform any household chores or outdoor work. (*Id.*). He indicated that he goes shopping with his fiancée once every few weeks and that she often accompanies him while grocery shopping. (Tr. 155). He is able to drive a car or sit in the passenger seat. (*Id.*). Zarkowski is capable of paying bills, counting change, and handling a checking and savings account. (*Id.*). His main hobby is watching sports television programs. (Tr. 156). Zarkowski visits his daughters regularly, but he does not participate in social activities as he was accustomed to doing before being injured in a work-related accident. (Tr. 157). He further noted that he does not have any problems getting along with family, friends, or neighbors. (*Id.*).

When asked to identify functions impacted by his condition, Zarkowski checked lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, seeing, memory, concentration, understanding, and following instructions. (*Id.*). He uses a cane to assist with his mobility and cannot walk without taking 10 to 15 minute breaks. (*Id.*). He must read instructions more than once and verbal instructions often have to be repeated. (*Id.*). Zarkowski also indicated that he does not handle stress or changes in routine well. (Tr. 158). Regarding his medications, Zarkowski reported that he suffers from side effects of nausea after taking his pain relievers. (Tr. 159).

The record also reflects that Zarkowski's fiancée drafted a second function reported dated

4

October 31, 2011. (Tr. 160-167). Her report is largely consistent with the undated one, though Zarkowski's fiancée indicated that the only time he operates a car is when he has to drive to doctors appointments. (Tr. 163). She also reported that Zarkowski is unable to pay bills, count change, or manage a savings or checking account. (*Id.*).

### 2. *Zarkowski's Testimony*

At the time of the August 15, 2012 hearing before the ALJ, Zarkowski stated that he was last employed as an iron construction foreman and had not returned to work since he was injured during a work-related accident on November 27, 2007. (Tr. 32). Zarkowski reported that he suffers from back and groin pain as well as psychological issues. (Tr. 33). He described the pain as an eight on a scale from one to ten with "shooting pain in the middle of [his] back" and a "stabbing sensation in [his] groin." (*Id.*). Zarkowski related that the pain sometimes radiates down his right leg, but that he mostly experiences numbness. (*Id.*). His condition is aggravated when he stands for a long period of time, but is relieved when he sits in his recliner with his legs elevated. (Tr. 34). Zarkowski indicated that he sits in his recliner approximately six to seven times a day for 20 to 30 minute intervals. (*Id.*). At most, he is able to stand for approximately 10 to 15 minutes before sitting down and he can sit for 30 minutes before he needs to stand. (Tr. 35).

Zarkowski further reported that he can walk one block before he needs to stop. (*Id.*). He uses a walking cane two to three times a week for "walking and balancing to relieve pain in [his] groin." (Tr. 36). He cannot rotate his back, or bend over to pick up objects from the floor, and he has difficulty climbing stairs. (*Id.*). Zarkowski attested that he can only lift the equivalent weight of a telephone book and mostly with his right hand. (*Id.*). He has undergone physical therapy, lumbar spine stimulation and some rhizotomies, none of which are significantly helpful. (Tr. 38).

Zarkowski specifically reported that the rhizotomies reduce his pain by 30 percent and normally last approximately two months before the pain recurs. (*Id.*). His medications are also problematic since they cause him to suffer drowsiness, nausea, and lack of concentration. (*Id.*). With respect to everyday chores, Zarkowski stated that he cannot do laundry, wash dishes, perform yard work, cook, or go grocery shopping. (Tr. 39-40). Other than going to local doctors appointments once every month, he keeps driving to a minimum. (Tr. 40). His personal care is limited to bathing, although his fiancée must dry him off from the waist down and assist him with putting on his pants and shoes. (*Id.*).

Regarding his psychological symptoms, Zarkowski testified that he has feelings of isolation, problems focusing and remembering, and he suffers from stress-related panic attacks "a couple of times a week." (Tr. 40-41). He has been hospitalized twice in the past six years for symptoms related to depression. (Tr. 42).

### 3. Medical Evidence

The Court has thoroughly reviewed the record, and will discuss the relevant medical evidence within the analysis portion of this Report and Recommendation.

### 4. Vocational Expert's Testimony

Dr. Christian R. Barrett testified as an independent vocational expert ("VE"). (Tr. 47-49). The ALJ asked the VE to imagine a claimant of Zarkowski's age, education, and work experience, who was limited to unskilled, light work with no production-like standards; no ropes, ladders, or scaffolds; only occasional superficial contact with the public; occasional interaction with co-workers and supervisors; and no uneven or shift in terrain involved. (Tr. 47). The VE stated that the hypothetical individual would not be able to perform any of Zarkowski's past relevant work, but would be capable of working in the positions of assembler, inspector,

packager, and sorter (15,000 jobs statewide). (Tr. 47-48). Alternatively, Zarkowski's attorney asked the VE to imagine a claimant limited to sedentary work; requiring a sit/stand option; and unable to bend, twist, crawl, or squat. (Tr. 48-49). The VE indicated that the same jobs would be available, but only numbering 8,000 statewide. (Tr. 49). When counsel inquired whether the same positions would be available if the hypothetical individual needed to remain in a seated/reclined position, the VE responded that there would be no jobs in the national economy that such an individual could perform. (*Id.*). Counsel then asked the VE whether the same jobs would be available if the hypothetical individual would be off task approximately 20 percent of the workday. (*Id.*). The VE similarly responded that there would be no jobs in the national economy that such an individual could perform. (*Id.*).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Zarkowski is not disabled under the Act. At Step One, the ALJ found that Zarkowski has not engaged in substantial gainful activity since November 26, 2007, the alleged onset date. (Tr. 16). At Step Two, the ALJ found that Zarkowski has the severe impairments of degenerative disc disease and depression. (*Id.*). At Step Three, the ALJ found that Zarkowski's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 16-18). The ALJ then assessed Zarkowski's residual functional capacity ("RFC"), concluding that he is capable of performing light work with the following limitations: "the claimant cannot climb rope, ladders, or scaffolds; he cannot perform work on uneven or shifting terrain; he must be permitted to have only superficial contact with the public and occasional interaction with coworkers and supervisors; and he is limited to the performance of simple, one-to-two step tasks with no production-like standards." (Tr. 18).

At Step Four, the ALJ determined that Zarkowski is unable to perform any past relevant work as a construction foreman, which is classified as skilled, heavy work. (Tr. 22). At Step Five, based in part on the VE's testimony, the ALJ concluded that Zarkowski is capable of performing a significant number of jobs that exist in the national economy. (Tr. 23-24). As a result, the ALJ concluded that Zarkowski is not disabled under the Act. (Tr. 24).

E.   **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Zarkowski v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (stating that "an ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**F.    Analysis**

Zarkowski argues that the ALJ erred at Step Three of the sequential evaluation by failing to properly explain why his physical impairments do not meet or medically equal Listing 1.04(A). He further contends that the ALJ's finding that Zarkowski has moderate limitations in maintaining concentration, persistence, and pace ("CPP") is not supported by substantial evidence, and that neither the RFC assessment nor the hypothetical questions posed to the VE accounted for this limitation. Each of these arguments will be addressed in turn. (Doc. #13 at 12-21).

### 1. *Listing 1.04(A)*

At Step Two, the ALJ found that Zarkowski has the severe physical impairment of degenerative disc disease.[1] (Tr. 16). He then proceeded to Step Three and concluded that this impairment does not meet or medically equal the criteria provided in Listing 1.04. (*Id.*). After noting that "[p]articular attention has been given to listing 1.04, for spine disorders," the ALJ omitted any mention of Listing 1.04(A) and instead discussed one of the criterion set forth in Listing 1.04(C), finding "there is no evidence that the claimant's back disorder has resulted in an inability to ambulate effectively, as defined in [Listing] 1.00(2)(b)." (*Id.*). Zarkowski now argues that the ALJ's failure to consider his impairment in relation to Listing 1.04(A) constitutes legal error warranting remand. (Doc. #13 at 12-17).

Zarkowski bears the burden of proving at Step Three that his impairments meet or medically equal a particular listing. *See Buress v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987). The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 CFR § 404.1525(a). In other words, a claimant who meets or medically equals the requirements of a listed impairment will be deemed conclusively disabled. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). "A claimant must satisfy all of the criteria to meet the listing," *Rabbers*, 582 F.3d at 653, and all of these criteria must be met concurrently for a period of twelve continuous months. *See* 20 C.F.R. §404.1525(c)(3), (4); 20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.00(D) ("[b]ecause abnormal physical findings may be intermittent, their presence over a period of time must be established by

---

[1] The ALJ also determined that Zarkowski suffers from depression. (Tr. 16).

a record of ongoing management and evaluation").

In evaluating whether Zarkowski satisfied this burden, the ALJ's decision had to provide "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record," 5 U.S.C. § 557(c)(3)(A), including whether Zarkowski's degenerative disc disease met or medically equaled Listing 1.04(A). A review of the decision indicates that the ALJ failed to comply with this basic requirement because his Step Three discussion omitted any mention of Listing 1.04(A), he did not set forth the criteria to meet or medically equal this listing, and he failed to analyze the medical evidence.

However, the Court may "overlook the ALJ's failure to articulate his Step Three findings if the error is harmless in nature." *M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846, 859 (E.D. Mich. 2012). An error will be deemed harmless where "'concrete factual and medical evidence' is 'apparent in the record' and shows that even if the ALJ had made the required findings, the ALJ *would have* found the claimant not disabled." *Id.* at 861 (internal citation omitted) (emphasis in original).[2] During the course of this review, the Court is not limited to an examination of the ALJ's Step Three analysis. *See White v. Comm'r of Soc. Sec.*, No. 12-11600, 2013 U.S. Dist. LEXIS 131775, at *21 (E.D. Mich. Sep. 16, 2013) (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)). Rather, it may search the entire decision to evaluate "whether the ALJ would have found Plaintiff not disabled in his Step Three analysis." *White*, 2013 U.S. Dist. LEXIS 131775, at *23 (collecting cases). Where the Court, based on the record and the ALJ's written decision, is able to answer that question in the affirmative, the ALJ's error is harmless. If, on the other hand, the evidence is of such a nature that the Court cannot glean how the ALJ would have ruled, the error is not harmless, and the case must be remanded so that

---

[2] As the *M.G.* court noted, the issue is whether the Court can conclude what the ALJ *would have found* had he fully addressed the issue, not what the ALJ *could have found*.

11

the ALJ may evaluate the issue in the first instance.

To determine whether the ALJ committed harmless error at Step Three, the Court must first look to the criteria for Listing 1.04(A). This listing covers disorders of the spine, including degenerative disc disease, which result in compromise of a nerve root or the spinal cord with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

20 C.F.R. Pt. 404, Subpt. P, Appx. 1, §1.04(A). As discussed below, there is a sufficient discussion of the record evidence in the ALJ's decision for this Court to find that had the ALJ addressed this Listing, he would have concluded that Zarkowski's physical impairment did not satisfy its criteria. *M.G.*, 861 F. Supp. 2d at 861.

In discussing the medical evidence related to Zarkowski's physical impairments, the ALJ first correctly noted that the medical records related to Zarkowski's treatment on August 8, 2008, "for reported degenerative disc disease, lumbar radiculopathy, and lumbar spondylosis by a nurse practitioner…do[] not report any abnormal findings in terms of the claimant's range of motion or strength, and his general health upon examination was noted to be good . . ." (Tr. 19, 354-55). The ALJ also found that a January 15, 2008 electromyelogram and nerve conduction study performed by consulting physician Edward A. Tashjian, M.D. revealed "no evidence of either neuropathy or radiculopathy." (Tr. 19, 22). Indeed, Dr. Tashjian's report found "normal EMG and NCS of the right and left lower extremities and bilateral lumbosacral paraspinals. No electrodiagnostic evidence of either a right or left lumbosacral radiculopathy…" (Tr. 345).[3]

---

[3] The ALJ also noted that Dr. Katharine Scharer found that a November 14, 2008 MRI of Zarkowski's lumbar spine was grossly unchanged from one performed on January 11, 2008, which was just a few days before Dr. Tashjian's study. (Tr. 19, 347-48).

12

Zarkowski points principally to evidence of nerve root compression indicated in a November 2008 MRI of the lumbar spine (Tr. 332-333, 352), treating physician notes showing sensory and motor nerve deficiencies at L3-L5 dermatone and at L4-L5 with absent reflexes (Tr. 294, 297), and his own testimony about the pain he experiences. However, none of these medical records support the conclusion that Zarkowski exhibited the type of motor loss – "atrophy with associated muscle weakness or muscle weakness" – necessary to establish an impairment under Listing 1.04(A)[4], and the ALJ offered a detailed and valid explanation as to why he found Zarkowski's statements about his functional limitations "at most partially credible." (Tr. 22).[5]

Consequently, although it would have been preferable for the ALJ to have explicitly discussed whether Zarkowski's physical impairments met or medically equaled Listing 1.04(A) at Step Three, this omission constituted harmless error because the medical record and the remainder of the ALJ's analysis makes clear that he "would have found [Zarkowski] not disabled even if his Step Three findings were more complete." *White*, 2013 U.S. Dist. LEXIS 131775, at *28 (citation omitted).

---

[4] Zarkowski exhibited "motor deficit with weakness . . . over [the] left lower leg" on only one occasion, which his treating physician, Kerkar Pramod, M.D., documented on December 1, 2010. (Tr. 243). This hardly satisfies the durational requirement that all of the criteria for a listing be concurrently established for a period of twelve continuous months. *See* 20 C.F.R. §404.1525(c)(3), (4); 20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.00(D).

[5] For instance, the ALJ noted that although Zarkowski had a longstanding relationship with a doctor who was prescribing him "narcotic pain medication at nearly every visit," Zarkowski had not been honest with the doctor about his prior drug abuse problem. (Tr. 20, 21, 22). He also noted that while that same doctor found Zarkowski's condition was so severe that he would be unable to walk even with a walker or cane, that finding was belied by other medical evidence as well as Zarkowski's presentation at the hearing. (Tr. 21).

### 2. *RFC Assessment*

After concluding that Zarkowski had moderate limitations in CPP (Tr. 17), the ALJ limited his RFC to light work with a further limitation to "the performance of simple, one-to-two step tasks with no production-like standards." (Tr. 18). Zarkowski contends that the ALJ's moderate CPP limitation is not supported by substantial evidence and that the RFC assessment did not adequately reflect this limitation. The Court disagrees.

As a preliminary matter, the Court finds that substantial evidence supports the ALJ's determination that Zarkowski has moderate CPP limitations. In fact, the medical record demonstrates that the ALJ's moderate CPP finding liberally construed Zarkowski's actual limitations. For instance, although the disability examiner indicated moderate limitations in Zarkowski's ability to maintain attention and concentration (Tr. 64), the Commissioner correctly notes that not a single treating source or consultative examiner opined that Zarkowski exhibited any speed or pace-based limitations. (Doc. #15 at 11-12). Moreover, the consultative mental examination report concluded that Zarkowski "would be able to [perform] work related activities at a sustained pace and understand basic written and verbal instructions and interact in a social or work environment" (Tr. 336), and the disability examiner indicated that Zarkowski "is capable of performing simple repetitive tasks, on a sustained basis." (Tr. 64). Thus, it appears that the ALJ's paced-based limitation requiring "no production-like standards" went beyond what the medical record would have otherwise mandated.

In addition, courts in this district have held that RFC assessments containing language similar to that which the ALJ used to describe Zarkowski's moderate CPP limitations are proper. *See e.g., Kendrick v. Comm'r of Soc. Sec.*, No. 12-15388, 2013 U.S. Dist. LEXIS 186513, at *26-28 (E.D. Mich. Dec. 30, 2013) (RFC limiting plaintiff to "simple, repetitive work that does

not involve more than 1-and 2-step tasks in a low stress environment (i.e., no fast-paced work, no work that involves quotas, and no assembly line work)" accounted for moderate CPP limitation); *Edmunds v. Comm'r of Soc. Sec.*, No. 09-13076, 2010 U.S. Dist. LEXIS 95356, at *19-22 (E.D. Mich. Aug. 17, 2010) (RFC limiting plaintiff to "simple, routine, repetitive work" sufficiently encompassed moderate CPP limitation). The Court also notes that Zarkowski has not suggested any additional limitations that would have more appropriately reflected the ALJ's moderate CPP finding.

Accordingly, the ALJ's moderate CPP limitation is supported by substantial evidence and is properly accounted for in his RFC assessment.

### 3. VE Hypothetical

Zarkowski also challenges what he characterizes as a "conflict" between the limitations contained in the hypothetical the ALJ posed to the VE and the ones he ultimately incorporated into Zarkowski's RFC. (Doc. #13 at 21-22). The ALJ's hypothetical question to the VE contemplated a fictional claimant capable of performing light "unskilled work with no production like standards." (Tr. 47). The ALJ's RFC determination limited Zarkowski to light work with a further limitation to "simple, one-to-two step tasks with no production-like standards." (Tr. 18). Zarkowski argues that (1) the ALJ's failure to incorporate a "one-to-two step task" limitation into the hypothetical question, and (2) the mere existence of the purported "conflict" require remand. The Court disagrees.

While "the failure to account for moderate deficiencies in concentration, persistence, or pace in the hypothetical question can constitute reversible error," the Court must nevertheless consider the ALJ's decision in view of the entire medical record to determine "whether the hypothetical limitations adequately describe the claimant's limitations." *Zizzo v. Comm'r of Soc.*

15

*Sec.*, No. 12-14042, 2013 U.S. Dist. LEXIS 134782, at *34-35 (E.D. Mich. Aug. 12, 2013) (citation omitted). Here, the question posed to the VE accurately reflected Zarkowski's *actual* limitations even though the ALJ did not ask the VE to contemplate a hypothetical claimant limited to "one-to-two step tasks." (Emphasis added). This is because the record is devoid of any medical opinion indicating that Zarkowski required a speed or pace-based limitation and confirms that Zarkowski could perform "simple repetitive tasks, on a sustained basis." (Tr. 64; *see* Tr. 336). Therefore, the ALJ did not commit reversible error when he omitted a "one-to-two step task" limitation from the hypothetical question posed to the VE.

Notwithstanding the foregoing, the Court, in any event, concludes that the hypothetical question limitation to "unskilled work with no production like standards" fully encompassed the ALJ's moderate CPP limitation. 20 C.F.R. § 404.1568(a) defines "unskilled work" as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time ... a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed." Numerous courts have therefore held that moderate CPP limitations were properly incorporated into hypothetical questions restricting claimants simply to "unskilled" and "non-production oriented" work. *See e.g., Zizzo*, 2013 U.S. Dist. LEXIS 134782, at *36 (holding that "plaintiff's moderate limitation in concentration, persistence or pace is fully accounted for in the limitation to unskilled, routine, and non-production work."); *Coleman v. Comm'r of Soc. Sec.*, No. 12-10809, 2013 U.S. Dist. LEXIS 45699, at *38 (E.D. Mich. Feb. 27, 2013) (holding that "[t]he ALJ sufficiently addressed Plaintiff's moderate concentrational limitations by restricting him to 'non-production oriented' and 'simple, unskilled work.'"); *cf. Allison v. Apfel*, No. 99-4090, 2000 U.S. App. LEXIS 22689, at *14 (6th Cir. Aug. 30, 2000) (equating simple, repetitive, and routine tasks with unskilled work).

16

As a result, the hypothetical question posed to the VE in this case not only encompassed the ALJ's moderate CPP limitation, but accurately reflected Zarkowski's actual limitations as well. There was no "conflict" necessitating a remand.

### III.     CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that Commissioner's motion for summary judgment [15] be GRANTED, Zarkowski's motion for summary judgment [13] be DENIED, and the Commissioner's decision be AFFIRMED.


Dated: February 13, 2015                             s/David R. Grand
Ann Arbor, Michigan                                  DAVID R. GRAND
                                                     United States Magistrate Judge


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 13, 2015.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
