UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER P. ZARKOWSKI,

        Plaintiff,

v.

Case No. 14-10742

SENIOR UNITED STATES DISTRICT JUDGE
ARTHUR J. TARNOW

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

_____/

**ORDER ADOPTING REPORT AND RECOMMENDATION [18]
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT [15] AND DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT OR REMAND [13]**

On February 13, 2015, Magistrate Judge Binder issued a Report and Recommendation ("R&R") [18] recommending that Defendant's Motion for Summary Judgment [15] be granted and that Plaintiff's Motion for Summary Judgment [13] be denied. Plaintiff filed an Objection [19] on November 25, 2015. Defendant filed a Response [20] to Plaintiff's Objection on February 26, 2015.

For the reasons stated below, the R&R [18] is **ADOPTED** and entered as the findings and conclusions of the Court. Defendant's Motion for Summary Judgment [15] is **GRANTED**. Plaintiff's Motion for Summary Judgment or Remand [13] is **DENIED**. Plaintiff's Objection [19] is **OVERRULED.**

## STATEMENT OF FACTS

Plaintiff applied for disability benefits on September 14, 2011, alleging that he became disabled and unable to work on November 26, 2007. The Magistrate Judge summarized the administrative record of Plaintiff's disability application as follows:

> *1. Disability Reports*
>
> In an undated disability report, Zarkowski indicated that he suffers from high blood pressure, depression, herniated discs, and anxiety. (Tr. 172). Zarkowski reported that he stopped working on November 26, 2007, as a result of these conditions. (*Id.*). With respect to his education level, Zarkowski completed the ninth grade but never pursued any further studies. (Tr. 173). Prior to stopping work, Zarkowski was employed as a construction foreman. (*Id.*). Zarkowski stated that Pramod Kerkar, M.D. treated him for the foregoing physical and mental impairments. (Tr. 176). At the time of the report, Zarkowski was taking Alaven, amitriptyline, and Cymbalta to treat his depression along with hydrocodone and oxycodone for pain relief. (Tr. 175).
>
> In an undated function report, Zarkowski stated that he lives in a house with his fiancée. (Tr. 152). When asked to describe his daily activities, Zarkowski indicated that he reads, takes naps, and watches television. (Tr. 153). His pain interferes with his sleep, which leaves him tired during the day. (*Id.*). Zarkowski needs his fiancée to remind him to take care of his personal hygiene and take his medicines. (Tr. 154). She also prepares all of his meals. (*Id.*). Zarkowski reported that he is unable to perform any household chores or outdoor work. (*Id.*). He indicated that he goes shopping with his fiancée once every few weeks and that she often accompanies him while grocery shopping. (Tr. 155). He is able to drive a car or sit in the passenger seat. (*Id.*). Zarkowski is capable of paying bills, counting change, and handling a checking and savings account. (*Id.*). His main hobby is watching sports television programs. (Tr. 156). Zarkowski visits his daughters regularly, but he does not participate in social activities as he was accustomed to doing before being injured in a work-related accident. (Tr. 157). He further noted that he does not have any problems getting along with family, friends, or neighbors. (*Id.*).

When asked to identify functions impacted by his condition, Zarkowski checked lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, seeing, memory, concentration, understanding, and following instructions. (*Id.*). He uses a cane to assist with his mobility and cannot walk without taking 10 to 15 minute breaks. (*Id.*). He must read instructions more than once and verbal instructions often have to be repeated. (*Id.*). Zarkowski also indicated that he does not handle stress or changes in routine well. (Tr. 158). Regarding his medications, Zarkowski reported that he suffers from side effects of nausea after taking his pain relievers. (Tr. 159).

The record also reflects that Zarkowski's fiancée drafted a second function reported dated October 31, 2011. (Tr. 160-167). Her report is largely consistent with the undated one, though Zarkowski's fiancée indicated that the only time he operates a car is when he has to drive to doctors appointments. (Tr. 163). She also reported that Zarkowski is unable to pay bills, count change, or manage a savings or checking account. (*Id.*).

*2. Zarkowski's Testimony*

At the time of the August 15, 2012 hearing before the ALJ, Zarkowski stated that he was last employed as an iron construction foreman and had not returned to work since he was injured during a work-related accident on November 27, 2007. (Tr. 32). Zarkowski reported that he suffers from back and groin pain as well as psychological issues. (Tr. 33). He described the pain as an eight on a scale from one to ten with "shooting pain in the middle of [his] back" and a "stabbing sensation in [his] groin." (*Id.*). Zarkowski related that the pain sometimes radiates down his right leg, but that he mostly experiences numbness. (*Id.*). His condition is aggravated when he stands for a long period of time, but is relieved when he sits in his recliner with his legs elevated. (Tr. 34). Zarkowski indicated that he sits in his recliner approximately six to seven times a day for 20 to 30 minute intervals. (*Id.*). At most, he is able to stand for approximately 10 to 15 minutes before sitting down and he can sit for 30 minutes before he needs to stand. (Tr.35).

Zarkowski further reported that he can walk one block before he needs to stop. (*Id.*). He uses a walking cane two to three times a week for "walking and balancing to relieve pain in [his] groin." (Tr. 36). He cannot rotate his back, or bend over to pick up objects from the floor,

and he has difficulty climbing stairs. (*Id.*). Zarkowski attested that he can only lift the equivalent weight of a telephone book and mostly with his right hand. (*Id.*). He has undergone physical therapy, lumbar spine stimulation and some rhizotomies, none of which are significantly helpful. (Tr. 38). Zarkowski specifically reported that the rhizotomies reduce his pain by 30 percent and normally last approximately two months before the pain recurs. (*Id.*). His medications are also problematic since they cause him to suffer drowsiness, nausea, and lack of concentration. (*Id.*). With respect to everyday chores, Zarkowski stated that he cannot do laundry, wash dishes, perform yard work, cook, or go grocery shopping. (Tr. 39-40). Other than going to local doctors appointments once every month, he keeps driving to a minimum. (Tr. 40). His personal care is limited to bathing, although his fiancée must dry him off from the waist down and assist him
with putting on his pants and shoes. (*Id.*).

Regarding his psychological symptoms, Zarkowski testified that he has feelings of isolation, problems focusing and remembering, and he suffers from stress-related panic attacks "a couple of times a week." (Tr. 40-41). He has been hospitalized twice in the past six years for symptoms related to depression. (Tr. 42).

*3. Medical Evidence*

The Court has thoroughly reviewed the record, and will discuss the relevant medical evidence within the analysis portion of this Report and Recommendation.

*4. Vocational Expert's Testimony*

Dr. Christian R. Barrett testified as an independent vocational expert ("VE"). (Tr. 47-49). The ALJ asked the VE to imagine a claimant of Zarkowski's age, education, and work experience, who was limited to unskilled, light work with no production-like standards; no ropes, ladders, or scaffolds; only occasional superficial contact with the public; occasional interaction with co-workers and supervisors; and no uneven or shift in terrain involved. (Tr. 47). The VE stated that the hypothetical individual would not be able to perform any of Zarkowski's past relevant work, but would be capable of working in the positions of assembler, inspector, packager, and sorter (15,000 jobs statewide). (Tr. 47-48). Alternatively, Zarkowski's attorney asked the VE to imagine a claimant limited to sedentary work; requiring a sit/stand option; and unable to

bend, twist, crawl, or squat. (Tr. 48-49). The VE indicated that the same jobs would be available, but only numbering 8,000 statewide. (Tr. 49). When counsel inquired whether the same positions would be available if the hypothetical individual needed to remain in a seated/reclined position, the VE responded that there would be no jobs in the national economy that such an individual could perform. (*Id.*). Counsel then asked the VE whether the same jobs would be available if the hypothetical individual would be off task approximately 20 percent of the workday. (*Id.*). The VE similarly responded that there would be no jobs in the national economy that such an individual could perform. (*Id.*).

**D. The ALJ's Findings**

Following the five-step sequential analysis, the ALJ found that Zarkowski is not disabled under the Act. At Step One, the ALJ found that Zarkowski has not engaged in substantial gainful activity since November 26, 2007, the alleged onset date. (Tr. 16). At Step Two, the ALJ found that Zarkowski has the severe impairments of degenerative disc disease and depression. (*Id.*). At Step Three, the ALJ found that Zarkowski's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 16-18). The ALJ then assessed Zarkowski's residual functional capacity ("RFC"), concluding that he is capable of performing light work with the following limitations: "the claimant cannot climb rope, ladders, or scaffolds; he cannot perform work on uneven or shifting terrain; he must be permitted to have only superficial contact with the public and occasional interaction with coworkers and supervisors; and he is limited to the performance of simple, one-to-two step tasks with no production-like standards." (Tr. 18).

At Step Four, the ALJ determined that Zarkowski is unable to perform any past relevant work as a construction foreman, which is classified as skilled, heavy work. (Tr. 22). At Step Five, based in part on the VE's testimony, the ALJ concluded that Zarkowski is capable of performing a significant number of jobs that exist in the national economy. (Tr. 23-24). As a result, the ALJ concluded that Zarkowski is not disabled under the Act. (Tr. 24).

## LEGAL STANDARDS

This Court reviews objections to an R&R on a dispositive motion *de novo*. *See* 28 U.S.C. § 636(b)(1)(c). Judicial review of a decision by an Administrative Law Judge ("ALJ") is limited to determining whether the factual findings are supported by substantial evidence and whether the ALJ employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The ALJ's factual findings "are conclusive if supported by substantial evidence." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 243 (6th Cir. 1987). "Substantial evidence is defined as more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard "does not permit a selective reading of the record," as the reviewing court's assessment of the evidence supporting the ALJ's findings "must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler,* 745 F.2d 383, 388 (6th Cir. 1984).

## ANALYSIS

### I. Objection One: Harmless Error at Step Three

The R&R [18] noted that the ALJ failed to comply with step three as he did not set forth the criteria to meet or medically equal Listing 1.04(A). The R&R [18] concluded, however, that this omission was a harmless error that did not warrant remand to the ALJ.

Plaintiff raises a single objection to the R&R [18]. Namely, Plaintiff objects that the ALJ's step three analysis was not a harmless error. Plaintiff argues that it is unclear what the ALJ would have concluded concerning medical equivalency at step three had the ALJ properly addressed the relevant evidence at this step.

Federal courts "must affirm the Commissioner's decision if it is 'supported by substantial evidence and was made pursuant to proper legal standard.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009). Additionally, a Commissioner's error is harmless when "concrete factual medical evidence . . . apparent on the record" shows that even if the ALJ had made the required findings, the ALJ would have found the claimant not disabled. *Id.* at 657–58. Given the ALJ's explicit reference to Listing 1.04(A) and considering the criteria for Listing 1.04(A), it is clear that, had the ALJ recited the Listing's criteria, he would have concluded that Plaintiff's impairments did not satisfy the criteria.

The criteria for Listing 1.04(A) covers disorders of the spine, including:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). . .

20 C.F.R. Pt. 404 Subpt. P, Appx 1, § 1.04(A). The ALJ analyzed Plaintiff's treatment report from Certified Nurse Practitioner Roas Maria Berry from August 8, 2008. The Report indicates "degenerative disc disease" but not "any abnormal

findings in terms of the claimant's range of motion or strength, and his general health upon examination was noted to be good." Dr. Tashkian's examination from January 15, 2008 found "no electrodiagnostic evidence of either a right or left lumbosacral radiculopathy. . ." Finally, Plaintiff's November 2008 M.R.I. of his lumbar spine not rise to the level to meet or satisfy the requirements of criteria Listing 1.04(A). Thus, a review of Plaintiff's medical evidence in the record indicates that ALJ's omission was a harmless error. This is because even if the ALJ had recited the Listing 1.04(A) criteria at step three findings, he still would have found Plaintiff not disabled.

The medical records do not support the conclusion that Plaintiff's impairments rise to a level that meets or satisfies the criteria of Listing 1.04(A). Had the ALJ made the required findings, he would still have concluded that Plaintiff is not disabled. The Court is satisfied that the ALJ's omission is a harmless error.

## CONCLUSION

The Court having reviewed the record in this case, the R&R [18] of the Magistrate Judge is hereby **ADOPTED** and is entered as the findings and conclusions of the Court. Accordingly,

**IT IS ORDERED** the Defendant's Motion for Summary Judgment [15] is **GRANTED**.

**IT IS FURTHER ORDERED** the Plaintiff's Motion for Summary Judgment or Remand [13] is **DENIED**.

**IT IS ORDERED** that Plaintiff's Objection [19] is **OVERRULED**.

This case is **CLOSED**.

**SO ORDERED**.

Dated: May 14, 2015

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge